UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Kevin Berglund, Civil No. 00-1699 (DSD/JMM)

Plaintiff,

v.

**ORDER**

City of Maplewood, Minnesota; Don Winger, an individual; Mike Ryan, an individual; David Thomalla, an individual; and John Banick, an individual,

Defendants.

and

Robert Zick, Civil No. 00-105 (DSD/JMM)

Plaintiff,

v.

City of Maplewood, Minnesota; Don Winger; Mike Ryan; Dave Thomalla; and John Banick,

Defendants.

Dan K. Nelson, Esq. and Nelson Law Office, 871 Seventh Street East, St. Paul, MN 55106, counsel for plaintiff Kevin Berglund.

John P. Borger, Esq., Eric E. Jorstad, Esq., Paul B. Civello, Esq. and Faegre & Benson, 2200 Norwest Center, 90 South Seventh Street, Minneapolis, MN 55402-3901, counsel for plaintiff Robert Zick.

Pierre N. Regnier, Esq., Joseph E. Flynn, Esq., Katherine E. Kennedy, Esq. and Jardine Logan & O'Brien, 2100 Piper Jaffray Plaza, 444 Cedar Street, St. Paul, MN 55101-2179, counsel for defendants.

FILED 10-26-01
RICHARD D. SLETTEN, CLERK
Judgment Ent'd. 10-26-01
Deputy Clerk's Initials ____

This matter is before the court on defendants' motions for summary judgment. Based upon a review of the file, record and proceedings herein, and for the reasons stated, the court grants defendants' motions.

**BACKGROUND**

Plaintiffs Kevin Berglund and Robert Zick host a public access television show entitled "Inside/Insight News Hour." This show is broadcast to cities located in Ramsey and Washington counties. The purpose of the show is to discuss current events in the City of Maplewood.

On December 28, 1999, a banquet was held at the Maplewood Community Center to honor three departing members of the Maplewood City Council. Invitations were sent to hundreds of members of the Maplewood community. The event was not paid for with public funds. Instead, a $15 attendance fee covered the cost of the event.

Berglund and Zick arrived at the banquet intending to videotape the event for their public access show, but refused to pay the $15 attendance fee. The parties dispute the facts surrounding plaintiffs' refusal to pay. Plaintiffs allege that Assistant Manager Mike Ericson gave them permission to film the event without paying the entrance fee, (Pl. Zick's Mem. Opp'n Defs. Mot. Summ. J. at 2.), while defendants, Police Chief Donald Winger, Captain Michael Ryan, Lieutenant John Banick, and Lieutenant David

Thomalla, claim that Ryan asked plaintiffs to pay or leave. (Mem. Supp. Defs.' Mot. Summ. J. at 4.) Berglund admits that he and Zick were asked to leave the event because they would not pay the entrance fee. When Berglund and Zick refused to leave, a confrontation between plaintiffs and defendants ensued.

The police officers escorted Berglund and Zick into a hallway of the community center. Berglund, Lieutenant Banick and Police Chief Winger had a verbal and physical confrontation in the hallway. The parties dispute the details of this confrontation. Berglund alleges that he peacefully cooperated with the police until they injured him, (Mem. Opp'n Defs.' Mot. Summ. J. at 5.), while defendants allege that Berglund began to act unruly when asked to leave. (Mem. Supp. Defs.' Mot. Summ. J. at 4.) Defendants claim that force was necessary to subdue Berglund. Id. Defendants then arrested Berglund and charged him with disorderly conduct, obstructing legal process and obstructing legal process with force.

Throughout this confrontation, Berglund operated a video recorder. When he was arrested, Berglund passed the video recorder to Zick. Zick refused to voluntarily give up the videotape inside the video recorder to defendants when they asked him to do so. As a result, Captain Ryan, Lieutenant Banick, and Lieutenant Thomalla restrained Zick and then confiscated the tape without a warrant. Defendants testified that they confiscated the tape because they

believed that the tape contained evidence of the commission of a crime, Berglund's disorderly conduct, and that the tape might be altered if they did not take it. (See Banick pp.216, 222-23, 316, 325; Thomalla pp.39, 46, 114, 158-161; Affidavit of Ryan submitted in opposition to Pls. Mot. Prelim. Inj.) Defendants then escorted Zick out of the community center.

Later that evening, Lieutenant Banick viewed the tape and Lieutenant Thomalla made a copy of its contents to give to Berglund. Defendants held the original tape as evidence. Berglund picked up the copy of the tape on December 30, 1999. Berglund and Zick gave copies of the tape to local television stations with no restrictions as to what they could do with it. Berglund and Zick also aired the tape on their program "Inside/Insight Newshour" on January 5, 2000.

Berglund filed this lawsuit against the City of Maplewood, police officers Don Winger, Mike Ryan, David Thomalla and John Banick alleging six counts: Count I-Violation of the Privacy Protection Act, Count II-Constitutional/Civil Rights Claims under 42 U.S.C. § 1983, Count III-Civil Rights Violation by Defendant City of Maplewood, Count IV-Violation of the Minnesota Free Flow of Information Act, Minn. Stat. § 595.021-024, Count V-Violation of the Minnesota Open Meeting Law, Minn. Stat. § 471.705, and Count VI-Punitive Damage Claim Against all Defendants. Zick also filed suit against the City of Maplewood, the police officers Don Winger,

Mike Ryan, David Thomalla and John Banick alleging two counts: Count I-Violation of the Privacy Protection Act, and Count II-Constitutional/Civil Rights claims under 42 U.S.C. § 1983.

Defendants in both cases now move for summary judgment. Because of the factual and legal similarities between these two motions, the court evaluates them together and denies both motions.

## DISCUSSION

### A. Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)(quoting Fed. R. Civ. P. 56(c)). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Id. at 322-23.

**B. Section 1983**

Plaintiffs Zick and Berglund claim that defendants Winger, Ryan, Thomalla, and Banick, acting under the color of state law, violated plaintiffs' rights under the First, Fourth and Fourteenth Amendments of the Constitution of the United States by seizing plaintiffs' videotape, viewing and copying the tape, preventing plaintiffs from gathering and disseminating information, refusing to return the tape and controlling its publication, using unreasonable and excessive force upon plaintiffs, and falsely arresting and prosecuting plaintiff Berglund. Plaintiffs specifically allege that these actions violate 42 U.S.C. § 1983. Because the court concludes that defendants did not violate plaintiffs' constitutional rights, plaintiffs' § 1983 claims fail.

**1. The Seizure of the Videotape**

Plaintiffs claim that defendants violated § 1983 when defendants seized their videotape without a warrant. They further assert that the court should analyze defendants' seizure in light of both the Fourth and First Amendments because defendants seized First Amendment material. Defendants, however, allege that the court must analyze the seizure under only the Fourth Amendment and claim that they did not violate plaintiffs' rights protected by this Amendment. Although the court concludes that both the First and Fourth Amendments apply, see Roaden v. Kentucky, 413 U.S. 496, 501 (1973)(stating that the Fourth Amendment cannot be read in a vacuum); United States v. Kelly, 529 F.2d 1365, 1372 (8th Cir. 1976)("[t]he Fourth Amendment should be read in conjunction with the First Amendment..." when First Amendment materials are seized), plaintiffs' claim nevertheless fails because defendants' search and seizure did not violate plaintiffs' constitutional rights.

When reading the First and Fourth Amendments together, the Supreme Court provided that the seizure of First Amendment materials is treated differently than the seizure of other materials under the Fourth Amendment. See Stanford v. Texas, 379 U.S. 476, 486 (1965)(acknowledging the difference between books and weapons, narcotics, or cases of whiskey); Roaden, 413 U.S. at 502, ("[t]he seizure of instruments of a crime, such as a pistol or a knife, or 'contraband or stolen goods or objects dangerous in

themselves,' are to be distinguished from quantities of books and movie films when the court appraises the reasonableness of the seizure under Fourth or Fourteenth Amendment standards.")(quoting Coolidge v. New Hampshire, 403 U.S. 443, 472 (1971)); Fort Wayne Books, Inc. v. Indiana, 489 U.S. 46, 63 (1989)("while the general rule under the Fourth Amendment is that any and all contraband, instrumentalities, and evidence of crimes may be seized on probable cause (and even without a warrant in various circumstances), it is otherwise when materials presumptively protected by the First Amendment are involved."); Zurcher v. Standford Daily, 436 U.S. 547, 564 (1978)("'A seizure reasonable as to one type of material in one setting may be unreasonable in a different setting or with respect to another kind of material.'"(quoting Roaden, 413 U.S. at 501).

In particular, First Amendment materials receive greater constitutional protection than other materials seized under the Fourth Amendment. See Fort Wayne Books,489 U.S. at 63 (explaining that the special protections accorded searches and seizures of First Amendment materials result from a concern about the risk of prior restraint); Zurcher, 436 U.S. at 564 (finding that "the requirements of the Fourth Amendment must be applied with 'scrupulous exactitude'" when materials seized are protected by the First Amendment)(quoting Stanford v. Texas, 379 U.S. 476, 485 (1965)). As the Eighth Circuit held in Kelly, the seizure of

materials presumptively protected by the First Amendment "demands a greater adherence to the Fourth Amendment warrant requirement." Kelly, 529 F.2d at 1372.

Because of the higher protection afforded First Amendment materials, the Eighth Circuit has allowed only one exception to the warrant requirement when these materials are seized: exigent circumstances to preserve evidence of a crime. Id. ("in the absence of exigent circumstances in which police must act immediately to preserve evidence of the crime, we deem the warrantless search of materials protected by the First Amendment to be unreasonable."); see Roaden, 413 U.S. at 505 ("Where there are exigent circumstances in which police action literally must be 'now or never' to preserve the evidence of the crime, it is reasonable to permit action without prior judicial evaluation."). Defendants' search and seizure of plaintiffs' videotape satisfies the exigent circumstances exception to the warrant requirement.[1]

**a. Exigent Circumstances Exception to the Warrant Requirement**

Police must, whenever practicable, obtain advance judicial approval of seizures through the warrant procedure. Terry v. Ohio, 392 U.S. 1 (1968). Warrantless seizures "are per se unreasonable

---

[1]Because the court reads the Eighth Circuit's decision in Kelly to mean that the exigent circumstances exception is the only exception to the warrant requirement in First Amendment cases such as this one, the court does not evaluate whether defendants' actions satisfy any other exceptions to the warrant requirement.

under the Fourth Amendment--subject only to a few specifically established and well delineated exceptions." Minnesota v. Dickerson, 508 U.S. 366, 372 (1993). The Supreme Court has stated that there is no need to obtain a warrant if (1) there is probable cause and (2) there are exigent circumstances requiring immediate action. Katz v. United States, 389 U.S. 347, 357 (1967). Defendants' seizure satisfies both prongs of this test for the exigent circumstances exception to the warrant requirement.

First, defendants had probable cause for the seizure. Probable cause is a "flexible, common-sense standard," merely requiring that a person of reasonable caution believe that "certain items may be contraband or stolen property or useful as evidence of a crime." Texas v. Brown, 460 U.S. 730, 742 (1983). It does not require that the belief be correct or more likely true than false. Id. Here, Lieutenant Banick, Lieutenant Thomalla and Captain Ryan believed that the tape contained evidence of Berglund's criminal acts when they seized the tape. (Banick pp.216, 222-223, 316, 325; Thomalla pp.39, 46, 114, 158-161.) This belief was reasonable because Berglund, who had control over the camera and videotape until he was arrested, recorded his confrontation with the police. Thus, the police had probable cause to seize the videotape.

Second, exigent circumstances justified the seizure. Exigent circumstances of the possible loss of evidence can justify a seizure. See State v. Wilson, 594 N.W.2d 268, 270 (Minn. Ct. App.

1999) In Loftus v. State, the police seized bedding and girl's clothing from defendant's apartment without a warrant after they had been notified that defendant allegedly raped a 6-year-old girl. 357 N.W.2d 419, 421 (Minn. Ct. App. 1984). The police sought to recover evidence of this crime from this seizure. After reviewing the totality of the circumstances, the court concluded that this warrantless seizure satisfied the exigent circumstances exception to the warrant requirement because of "the presence in the house of a third person and the ease with which the evidence might be destroyed." Id. at 422.

Similarly, in State v. Mollberg, the police searched defendant's house for marijuana while they were in the house executing a search warrant for freshly killed deer. 246 N.W.2d 463, 466 (Minn. 1976). 246 N.W.2d at 466. The police seized marijuana without a warrant after seeing the marijuana in plain view Id. In examining the totality of the circumstances, the court concluded that there was probable cause for the search and that the search satisfied the exigent circumstances exception because of the presence of a third person in the house who could have destroyed the evidence. Id. at 469; see also State v. Wilson, 594 N.W.2d at 270 (finding that exigent circumstances of possible loss of evidence justified seizure of a third person who had been handed the potential evidence by a suspect and then attempted to run away with it).

As the companion in Loftus or the third person in Mollberg, Zick was Berglund's companion and was in the position to destroy the video recording. Moreover, Lieutenant Banick, Lieutenant Thomalla and Captain Ryan believed that the tape could be destroyed, erased or tampered with if they did not take it from Zick. (See Banick pp.216, 222-23, 316, 325; Thomalla pp.39, 46, 114, 158-161; Affidavit of Ryan submitted in opposition to Pls. Mot. Prelim. Inj.) Thus, because defendants seized the tape to preserve evidence and had probable cause to do so, their warrantless seizure satisfies the exigent circumstance exception to the warrant requirement and does not violate the Constitution.

**2. Viewing and Copying the Videotape**

Plaintiffs further allege that defendants violated § 1983 by viewing and copying the videotape without a warrant. Plaintiffs, however, did not have a reasonable expectation of privacy in the contents of the tape because the tape documented events that occurred in a public place and in the presence of the viewing officer. In United States v. Whitten, 706 F.2d 1000, 1011 (9th Cir. 1983), the court found no reasonable expectation of privacy in an answering machine tape to the extent that it recorded communications that were overheard by the officers. Likewise, plaintiffs have no reasonable expectation of privacy in a videotape to the extent that it recorded communications that the officers observed. Because defendants did observe the events recorded on

the tape, which occurred in a public place, defendants' viewing and copying the tape's contents did not violate plaintiffs' constitutional rights.

**3. Gathering and Disseminating Information**

Pursuant to § 1983, plaintiffs claim that defendants violated their First Amendment right to gather and disseminate information by seizing the videotape and removing plaintiffs from the event. While the First Amendment protects the right to gather information, this right is not absolute. See Zemel v. Rusk, 381 U.S. 1, 17 (1965)("[t]he right to speak and publish does not carry with it the unrestrained right to gather information."); United States v. Brown, 250 F.3d 907, 913 (5th Cir. 2001)("the right to gather news, much like other first amendment rights, is not absolute."). The First Amendment "does not guarantee the press a constitutional right of special access to information not available to the public generally," Branzburg v. Hayes, 408 U.S. 665, 684 (1972), and it does not compel others - private citizens or governments - to supply information to the media, Houchins v. Kqed, Inc., 438 U.S. 1, 11 (1978). Here, plaintiffs had no greater right than the public to gather information at this event. Like all other members of the public, plaintiffs only had access to the information at the event if they paid the $15 attendance fee. Because they refused to pay the $15 attendance fee, they had no right to the information at the event under the First Amendment. Thus, defendants did not

violate plaintiffs' First Amendment right by seizing the videotape and removing plaintiffs from the event.

**4. Returning the Videotape**

Plaintiffs further claim that defendants violated the First Amendment and thus § 1983 by refusing to return to videotape and controlling the timing of its publication. This claim also fails because the facts show that defendants promptly returned a copy of the original tape to plaintiff Berglund within 48 hours of the event, thus allowing plaintiffs to distribute a copy of the tape to local stations and to air the tape on their own program on January 5, 2000.

**5. Excessive Use of Force**

Plaintiffs Zick and Berglund next claim that defendants violated § 1983 by using unreasonable and excessive force. Plaintiff Berglund alleges that defendants used unreasonable and excessive force when forcing plaintiff Berglund from the Maplewood Community Center Banquet Hall and when arresting him. Plaintiff Zick claims that defendants used unreasonable and excessive force when defendants removed the videotape from his possession. These claims fail because defendants' use of force was reasonable under the circumstances.

The Supreme Court in Graham v. Connor held that the Fourth Amendment's "objective reasonableness" standard must be used to determine whether police officers have used excessive force. 490

U.S. 386, 388 (1989). According to the Supreme Court, this standard requires a careful balancing of "'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." Id at 396, (quoting United States v. Place, 462 U.S. 696, 703 (1983); see also Foster v. Metro. Airports Comm'n, 914 F.2d 1076, 1081 (8th Cir. 1990)(stating that a court must examine whether "the totality of the circumstances justifies the use of the force used.").

The Court emphasized that reasonableness "must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." The Supreme Court further stressed that "'[n]ot every push or shove, even if it may later seem unnecessary in the peace of the judge's chambers' violates the Fourth Amendment." Graham, 490 U.S. at 396, (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)); see also Greiner v. City of Champlin, 27 F.3d 1346, 1355 (8th Cir. 1994)("When an arrestee flees or resists, some use of force by the police is reasonable.").

In Greiner, appellants claimed that the police used excessive force while trying to arrest them after a neighbor complained about their loud party. 27 F.3d at 1354. The court concluded that the

police did not use excessive force. Id. at 1355. Particularly important to the court's conclusion were the facts that several of the appellants struggled with the police and that appellants suffered little or no injuries from the struggle. Id.; see also Foster, 914 F.2d at 1082 (finding no use of excessive force where appellant initially resisted arrest and where appellant did not sustain any injuries, even though the police shoved him against the wall twice after appellant stopped resisting).

As in Greiner, plaintiffs in this case resisted police requests. In particular, Berglund resisted arrest and Zick refused to hand over the videotape to the police when they requested it. Moreover, as in Greiner, neither Berglund nor Zick suffered significant injuries, and those injuries that they did sustain could well be the result of their own resistance to the police. Thus, like the defendants in Greiner, the court finds that defendants used reasonable force to effectuate their arrest of Berglund and to seize the videotape from Zick. The court therefore concludes that plaintiffs' § 1983 claim of unreasonable and excessive force fails because the defendants actions do not violate the Fourth Amendment.

**6. Malicious Prosecution**

Plaintiff Berglund asserts that defendants violated § 1983 by maliciously prosecuting Berglund. Section 1983 only provides a rememdy for violations of rights expressly secured by federal

statutes or the Constitution. Maine v. Thiboutot, 448 U.S. 1, 4 (1980); See also Pace v. City of Des Moines, 201 F.3d 1050, 1055 (8th Cir. 2000)(holding that action for malicious prosecution is not actionable under § 1983 because it does not state a constitutional injury); Kurtz v. City of Shrewsbury, 245 F.3d 753 (8th Cir. 2001); McNees v. City of Mountain Home, 993 F.2d 1359 (8th Cir. 1993). The Constitution does not mention malicious prosecution nor does plaintiff cite a persuasive basis for a federal action for malicious prosecution. Moreover, this court has uniformly held that malicious prosecution by itself is not punishable under § 1983 because it does not allege a constitutional injury. See, e.g., Gunderson v. Schlueter, 904 F.2d 407, 409 (8th Cir. 1990). Thus, plaintiffs' allegation of malicious prosecution cannot sustain a civil rights claim under § 1983.[2]

**C. Qualified Immunity**

Because the court finds no instance in which the defendants violated plaintiffs' statutory or constitutional rights, the court need not consider the defendants' affirmative defense of qualified immunity. Nevertheless, the court concludes that even if the defendants' acts had been unconstitutional, the defendants would be

---

[2]Plaintiffs also claim that defendants violated plaintiffs' Fifth Amendment right to due process and just compensation. Because the court concludes that plaintiffs have inadequately address this issue, the court also dismisses this claim.

entitled to qualified immunity because their actions were reasonable.

"[G]overnment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). To determine whether an officer is entitled to qualified immunity, the Eighth Circuit considers the "objective legal reasonableness" of the officer's conduct in light of the information he possessed at the time of the alleged violation. Winters v. Adams, 254 F.3d 758, 766 (8th Cir. 2001)(quoting Harlow, 457 U.S. at 819). Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that the defendant should have taken the disputed action. Malley v. Briggs, 475 U.S. 335, 341 (1986).[3]

Whether a police officer is immune is a question of law. Hunter v. Bryant, 502 U.S. 224, 228 (1991). The court in Myers v. Becker County, 833 F. Supp. 1424, 1431 (D. Minn. 1993), set out a four-prong test for the qualified immunity defense: (1) the court

---

[3]Qualified immunity gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law. Hunter v. Bryant, 502 U.S. 224, 229 (1991). This accommodation for reasonable error exists so that officials are not forced to err on the side of caution because they fear being sued. Id.

must first determine whether the plaintiff has asserted a constitutional right; (2) the court must determine whether the constitutional right in question is "clearly established;" (3) the court must then decide if the plaintiff has shown that the defendant violated the clearly established right; (4) finally, if the plaintiff can show that the defendant's conduct violated clearly established law, the defendant "'must demonstrate that no material issues of fact remain as to whether the defendant's actions were objectively reasonable in light of the law and the information the defendant possessed at the time of his actions,'" Id. (quoting Cross v. City of Des Moines, 965 F.2d 629, 632 (8th Cir. 1992).

In this case, even if the court assumed that defendants violated plaintiffs' constitutional rights, defendants nonetheless acted reasonably.[4] For instance, as previously stated, defendants' seizure of the tape was proper because defendants reasonably

---

[4]Although Plaintiff Berglund's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment does not explicitly state it, he implies that the defendants lacked probable cause for his arrest. Berglund cannot challenge the validity of his arrest as the state court found adequate evidence of probable cause to arrest Berglund in State v. Berglund. See Patzner v. Burkett, 603 F. Supp. 1139, 1143 (D.N.D. 1985)(the state court's finding of probable cause is binding for the purposes of a civil rights action under § 1983.). Similarly, Berglund implies that he was only arrested because of his historically negative relationship with the Maplewood police. However, it is clearly established law that the subjective intent of an officer is irrelevant where an arrest is supported by probable cause. Whren v. United States, 517 U.S. 806, 813 (1996).

believed plaintiffs' film contained evidence of a crime and reasonably believed that the evidence might be destroyed if they did not seize the tape. Similarly, defendants returned a copy of the tape to Berglund within a reasonable amount of time, 48 hours, and acted reasonably when copying and viewing the tape. See United States v. Albers, 136 F.3d 670, 674 (9th Cir. 1998)(upholding warrantless search of film seven to ten days after seizure). Furthermore, defendants acted reasonably in denying plaintiffs access to the event because they did not pay the entrance fee and used an acceptable amount of force to arrest Berglund and remove the tape from Zick. Therefore, even if defendants had violated the plaintiffs' statutory or constitutional rights, defendants would have been entitled to qualified immunity.[5]

Additionally, although plaintiffs appear to argue that the defendants are not entitled to qualified immunity because they were not acting within the proper scope of their employment during the confrontation, the court finds this argument unpersuasive. The plaintiffs cite Harlow v. Fizgerald for the proposition that only police officers that are "performing discretionary functions" are entitled to the protection of qualified immunity. 457 U.S. 800, 818 (1982). The plaintiffs have failed to show how the defendants

---

[5]The court does not consider defendants' qualified immunity defense to plaintiff Berglund's claim of malicious prosecution under § 1983, because, as discussed, the court finds that malicious prosecution is not actionable.

were not performing a proper police function when they ordered plaintiffs to leave the convention center.

**D. Section 1983 Claims Against the City Of Maplewood**

Plaintiffs also assert that the City of Maplewood is liable for the officers' actions in this suit. However, because the court has determined that the individual officers did not commit any unlawful acts, plaintiffs' claim against the City of Maplewood fails. A plaintiff must first establish that an officer's action is unlawful in order to find a municipality liable under § 1983. Kiser v. City of Huron, 219 F.3d 814, 816 (8th Cir. 2000). A city cannot be liable for a police officer's alleged constitutional violation unless the police officer is liable on the underlying substantive claim. Abbott v. City of Crocker, 30 F.3d 994, 998 (8th Cir. 1994). Because the court has not found any of the individual police officers liable under any of plaintiffs' substantive claims, the City of Maplewood cannot be held liable for any of plaintiffs' claims.

Plaintiffs further allege that Maplewood is liable in it's own right because its government officials adopted unconstitutional policies. Specifically, plaintiffs allege that Maplewood's chief of police ratified and adopted unconstitutional policies when he approved of the defendants' actions during the confrontation that took place between plaintiffs and defendants. In the Eighth Circuit, "[m]unicipal officials who have final policymaking

authority may, by their actions, subject the government to Section 1983 liability." Angarita v. St. Louis County, 981 F.2d 1537, 1546 (8th Cir. 1992). If an unconstitutional ordinance, regulation, or decision is officially adopted and promulgated by the municipality's governing body, the municipality may be held liable under § 1983. Id. Here, however, plaintiffs have failed to show that a Maplewood city official with policymaking authority adopted or ratified any unconstitutional policy.

Furthermore, even if the plaintiffs did establish that Maplewood's chief of police adopted or ratified an unconstitutional policy during the event, the city would not be liable because the court finds that plaintiffs did not suffer any constitutional injury. City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986)("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that ... departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point."); see also Roe v. Humke, 128 F.3d 1213, 1218 (8th Cir. 1997) (holding that because there was no underlying violation of the plaintiff's constitutional rights by the defendant, a police officer, the chief of police could not be held liable for adopting unconstitutional customs and policies); Brodnicki v. City of Omaha, 75 F.3d 1261, 1266 (8th Cir. 1996)(holding that because defendant police officers did not violate the plaintiff's constitutional rights, the

plaintiff's claim that the City of Omaha adopted unconstitutional customs lacked merit); Abbott, 30 F.3d at 998 (holding that the City of Crocker could not be liable in connection with either an excessive force claim or an invalid arrest claim, because the defendant police officers did not violate the plaintiff's constitutional rights). Therefore, this claim against the City of Maplewood also fails.

**E. Privacy Protection Act**

Plaintiffs next allege that the city is liable to them for the officers' conduct, which they claim constituted a violation of their rights under the Privacy Protection Act. This Act generally prohibits government officials from searching for and then seizing work product or documentary materials possessed by a person in connection with a purpose to disseminate information to the public. See generally 42 U.S.C. § 2000aa (1994). While the court notes that a question exists about whether the Act even applies in this circumstance, the court does not reach this question because, even if the Act does apply, defendants' actions are protected by two exceptions to the Act.

First, the defendants' actions satisfy the "criminal suspect" exception. Section 2000aa (a)(1) and 2000aa(b)(1) allow a government officer to search for and seize "work product" or "documentary materials" if "there is probable cause to believe that the person possessing such materials has committed or is committing

the criminal offense to which the materials relate." 42 U.S.C. § 2000aa (a)(1),2000aa(b)(1); see DePugh v. Sutton, 917 F. Supp. 690, 696 (W.D. Mo. 1996)("The P.P.A. clearly allows the government to depart from the requirements of the Act in those instances in which the person suspected of a crime is in possession of documents related to the crime.").

This exception applies to defeat plaintiffs' claims because the defendants seized the videotape from a camera that Berglund held and operated, and the videotape contained evidence of Berglund's allegedly criminal act. As the defendants correctly noted, the mere fact that the tape was removed from the camera while the camera was in Zick's possession does not change the applicability of this Section. (Mem. Supp. Defs.' Summ. J. at 27.)

The "destruction of evidence" exception to the Act also protects defendants' actions. According to Section 2000aa(b)(3), the "destruction of evidence" exception allows an officer to search for and seize material relating to the investigation of a criminal matter if "there is reason to believe that the giving of notice pursuant to a subpoena duces tecum would result in the destruction, alteration, or concealment of such materials." 42 U.S.C. § 2000aa(b)(3).

Here, an objectively reasonable officer would have reason to believe that Zick, who was Berglund's companion, would erase or

tamper with the videotape that provided evidence of Berglund's conduct. See State v. Mollberg, 246 N.W.2d 463, 469 (Minn. 1976) (finding that a warrantless search was justified due to the presence of a third party who could destroy evidence; Loftus v. State, 357 N.W.2d 419 (Minn. Ct. App. 1984)(concluding that a warrantless search was justified due to the presence of a third party who could easily destroy evidence). Thus, for the same reasons that the court concludes that defendants did not need to obtain a search warrant under the exigent circumstances exception, the court concludes that defendants actions satisfy the "destruction of evidence" exception to the Act. See Citicasters v. McCaskill, 89 F.3d 1350, 1356 (8th Cir. 1996)("the Privacy Protection Act does not require an application for a search warrant....")

**F. Open Meeting Law**

Plaintiff Berglund further claims that defendants violated the Open Meeting Law under Minn. Stat. § 471.705 (now Minn. Stat. Chapter 13D) and that defendants owe Berglund $300. This claim, however, fails because the Open Meeting Law ("OML") does not apply in this case.

Under the OML, the meetings of a governing body must be open to the public when public business is discussed. See generally Minn. Stat. § 13D.01. To determine if a meeting must be open under the OML, the public's right to be informed must be balanced against

the public's right to the effective and efficient administration of public bodies. Moberg v. Independent School District No. 281. 336 N.W.2d 510, 517 (Minn. 1983). Under this test, the court in Moberg held that meetings which must be open to the public are "those gatherings of a quorum or more members of the governing body, or a quorum of a committee, subcommittee, board, department, or commission thereof, at which members discuss, decide, or receive information as a group on issues relating to the official business of that governing body." Id. at 518.

Here, Berglund failed to show how the event on December 28, 1999, constituted a "meeting" subject to the OML as defined by Moberg. The court has not heard any evidence that shows that the members of the Maplewood City Council who attended the event discussed, decided, or received information as a group on issues relating to the official business of that governing body. The record shows that the event was a retirement party, a social event. Social events are exempt from the requirements of the OML statute. St. Cloud Newspapers, Inc. v. Dist. 742 Cmty. Schools, 332 N.W.2d 1, 7 (Minn. 1983). Thus, the OML does not apply to this event.

**G. The Minnesota Free Flow of Information Act**

Finally, Plaintiff Berglund alleges that the defendants violated the Minnesota Free Flow of Information Act, Minn. Stat. § 595.021-595.025, by denying plaintiff of his accorded distribution when they took the videotape of the event that he

intended to air on his news program. While not explicitly asserting a claim under this Act, Zick also make reference to this Act. (Pl. Zick Mem. Law Opp'n Defs.' Mot. Summ. J. 18.) The Act, however, does not apply to the facts of this case.

The public policy purpose of the Minnesota Free Flow of Information Act is "to insure and perpetuate, consistent with the public interest, the confidential relationship between the news media and its sources." Minn. Stat. § 595.022. Here, plaintiffs assert no confidential relationship and identify no source that they aim to protect by asserting rights under the Act. Thus, the Free Flow of Information Act simply does not apply in this case and plaintiffs' claims under this Act must fail.

**H. Damages**

Because the court dismisses all of plaintiffs' claims against defendants, plaintiffs are not entitled to damages.

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that defendants' motions for summary judgment are granted and plaintiffs' claims are dismissed with prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: October 25, 2001

David S. Doty, Judge
United States District Court

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*